Statement of the Case.
MONROE, J.
The decedent died intestate, leaving a widow and three children, issue of the marriage, and no other property save that held in community. By way of answer *213 to the petition of the widow and children to be put in possession, the former, as owner of one half of the property and as usufructuary of the other half, and the latter, as heirs of their father, subject to the usufruct of their mother, the clerk of the civil district court, as collector of the inheritance taxes for the parish of Orleans, alleges that the widow owes that tax upon said usufruct. The judge a quo apparently thought otherwise, as he rendered judgment putting the widow and heirs in possession as prayed for, without requiring the tax to be paid; and the collector has appealed from his judgment.
Opinion.
The law relied on by the appellant is to be found in articles 235 and 236 of the Constitution, Act No. 45, p. 102, of 1904, and Act No. 109, p. 173, of 1906, which (so far as they need to be here quoted) read as follows:
“Art. 235. The Legislature shall have power to levy, solely for the support of the public schools, a tax upon all inheritances, legacies and donations; provided, no direct inheritance, or donation, to an ascendant or descendant, below $10,000 in amount or value, shall be taxed; provided, further, that no such tax shall exceed three per cent, for direct inheritances and donations, to ascendants or descendants, and ten per cent, for collateral inheritances and donations to collaterals or strangers; provided, bequests to educational, religious, or charitable institutions shall be exempt from this tax.
“Art. 236. The tax provided for in the preceding article shall not be enforced when the property donated or inherited shall have borne its just proportion of taxes prior to the time of such donation or inheritance.”
By Act No. 45, p. 102, of 1904, a tax at the maximum rate allowed, was imposed, practically in the language of the Constitution. Act No. 109, p. 173, of 1906, reads in part as follows:
“Section 1. * * * That there is now, and shall hereafter be, levied, solely for the support of the public schools, on all inheritances, legacies and other donations mortis causa, to, or in favor of, the direct descendants or ascendants of the decedent, a tax of two per centum, and, on all such inheritances or dispositions to, or in favor of, the collateral relatives of the deceased, or strangers, a tax of five per centum, on the amount or actual cash value thereof, at the time of the death of the decedent.
s-s >}s í¡s tfc ❖ *
“Sec. 23. * * * In fixing the value of any legacy or donation mortis causa which consists, in whole or in part, of an annuity or usufruct,, or right of use or habitation, the court shall consider the expectancy of life of the legatee or donee according to the table known as the American Experience Table of Mortality, at six per cent, per annum, compound interest.”
The statute last above mentioned contains many other provisions (relating mainly to the manner in which the tax levied by it is to be collected), but enough has been quoted to show that the General Assembly, as well as the convention that framed the Constitution, in dealing with the subject under' consideration, contemplated the taxing, with certain exceptions, of all inheritances, whether legal, testamentary, or irregular, and whether falling to ascendants, descendants, collateral relatives, or strangers.
The first question presented, therefore, in this ease, is: Does the surviving member of the matrimonial community acquire the usufruct of the share of the predeceased spouse by inheritance or by some other title. The language of the Revised Civil Code, under and by virtue of which the right in question is created, reads:
“Art. 915. In all cases, when either husband or wife shall die, leaving no ascendants or descendants and without having disposed by last will and testament of his or her share in the community property, such share shall be held by the survivor, in usufruct, during his, or her, natural life.
“Art. 916. In cases where the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament of his, or her, share in the community property, the survivor shall hold, in usufruct, during his, or her, natural life, so much of the share of the deceased in such community property as may be inherited by said issue.
“This usufruct shall cease, however, whenever the survivor shall enter a second marriage.”
It will be observed that this law provides that the surviving spouse shall “hold * * * so much of the share of the deceased as may be inherited by such issue,” *215 etc., and it will be noted that the Code 'further provides that:
“Art. 917. When the deceased has left neither lawful descendants nor lawful ascendants, nor collateral relatives, the law calls to his inheritance either the surviving husband or wife, or his, or her natural children, or the state, in the manner and order hereafter directed.”
It would appear, therefore, to have been the purpose of the lawmakers to distinguish between the maintenance of the surviving spouse in the possession and usufruct of an estate, previously held in common with the deceased spouse, and the title by inheritance, which is devolved upon the heirs, including, under certain conditions, such surviving spouse. And this seems to have been the view heretofore taken of the matter by this court. Thus, referring to the law as contained in Rev. Civ. Code, arts. 915, 916, it was said, in a comparatively recent case:
“The purpose of the law -was, unless the deceased spouse disposed of his share of the community,- to preserve intact the community-property, to be enjoyed by the surviving spouse, during- * * * her natural life or widowhood, when there were children of the marriage. The child of the marriage inherits the share in the community of the deceased parent, subject to the usufructuary rights of the surviving parent.” (italics by the present writer.) Succession of Teller, 49 La. Ann. 282, 21 South. 265.
In an earlier ease it .appeared that a marriage took place in Pennsylvania in 1813, that the husband moved to Louisiana in 1815, that the wife did not come with him or afterwards, and that the Spanish law, which accorded to the wife community rights in this state, even -though she had never come within its jurisdiction, was repealed in 1828, and had not been replaced by article 2370 (now 2401) of the Civil Code, or by any other provision of our law; and it was argued that the wife, in the ease before the court, had no community interest in the property that the husband had acquired here. The court, however, said:
“The rights of husband and wife grow out of the marriage contract, and do not originate in its dissolution; and it is impossible to distinguish between the- interest proceeding from such a contract and that which springs from any other agreement the law sanctions. If, therefore, by the law of the country where the marriage took place, a community of acquets and gains was declared .to be created by the marriage, or, in the language of our Code, superinduced by right of contract, we should think that a subsequent law, declaring there should be no further community between the persons who had entered into this engagement, would be retrospective, and as much in violation of the rights vested under the contract as a statute would be which would alter the obligation imposed or impair the rights acquired under a contract of sale or lease.” Dixon v. Dixon’s Ex’r, 4 La. 188, 23 Am. Dec. 478.
It is true that the right of usufruct which is vested in the surviving spouse is defeasible at the will of the deceased, but it is, nevertheless, a right conferred by the law, which enters into and forms part of the marriage contract, and, of which the survivor can be deprived by no one save the deceased spouse; and it seems to us hardly correct to say that the surviving spouse necessarily takes the usufruct by inheritance from the deceased, because the latter has not made a testamentary disposition to the contrary. At all events, it is a matter within the control of the lawmakers, and they have thought proper to say that the surviving spouse shall “hold” the usufruct (except where the deceased spouse has, by will, exercised the right of disposing of it) and shall take from the deceased spouse “by inheritance” only in default of descendants, ascendants, or collateral relatives. In the Matter of the Succession of Moore, it appears that the husband had bequeathed to his wife the disposable portion of his estate and the usufruct of the whole of it, and it was contended that, after giving her the disposable portion, there was nothing more that he could give, and hence that she was not entitled to the usufruct, or, at least, that she could not take both the disposable portion and the usufruct. This court, however, speaking through Bermudez, Chief Justice, said:
*217 “The purpose of the law was, obviously, to enlarge the rights of the surviving spouse, by conferring on him or her privileges not previously possessed. Under anterior laws said spouse was entitled to -take only his share of the community property, and had no claim whatever in the portion accruing to the issue of his marriage with the deceased. * * * Since - the passage of the law the surviving spouse has, virtute legis, a right of usufruct over the share of the deceased in the community property inherited by the issue of the marriage, whenever the deceased has not, by testamentary disposition, provided to the contrary.” Succession of Moore, 40 La. Ann. 531, 4 South. 460.
We conclude, therefore, that it is not the intention of the law that the surviving spouse should be considered as acquiring in usufruct the estate of the deceased spouse by inheritance, and hence that the right of usufruct in such ease is not subject to the tax on inheritances here sought to be collected.
The judgment appealed from is therefore affirmed.